UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

DEBRA GOODMAN

                                     Plaintiff,

                 -against-                         **14 CV 5261 (CM)**

THE CITY OF NEW YORK, POLICE OFFICER
STEVEN RODRIGUEZ,  shield no. 28141, POLICE
OFFICERS JOHN DOE and RICHARD ROE and other
unidentified members of the New York City Police
Department

                                     Defendants.
-------------------------------------------------------------------- X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON QUALIFIED
IMMUNITY**

SIEGEL TEITELBAUM & EVANS LLP
260 Madison Avenue, 22nd Floor
New York, NY 10016
(212) 455-0300


*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT............................................................................1

FACTUAL STATEMENT.................................................................................1

ARGUMENT....................................................................................................4

I.     DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNIYT ON PLAINTIFF'S FOURTH AMENDMENT, FALSE ARREST AND MALICIOUS PROSEUCTION CLAIMS ......................................................................................................4

     A.  The legal standard for qualified immunity in a summary judgment motion................ 4

          1.  Defendant's Exhibit B Should be Excluded Under This Court's Individual Practice Rules ......................................................................................5

     B.  Defendant did not have arguable probable cause to arrest Ms. Goodman for any of the charges ..............................................................................................7

          1.  Obstruction of Governmental Administration.......................................7

          2.  Disorderly Conduct.......................................................................10

          3.  Harassment (second degree) and Resisting Arrest................................15

II.    DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNIYT ON PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM ...............................................17

     A.  The right to film in public was clearly established at the time of the arrest.................................................................................................18

          1.  Second Circuit authority establishes that there is a right to film in public....18

          2.  At the time of Ms. Goodman's arrest, there was also a consensus among courts that the First Amendment protects the right to record police activity in public..................................................................................20

CONCLUSION ...........................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*ACLU of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) ..................................... 22

*Adonis v. Court Officer Coleman*, 2009 WL 3030197 (S.D.N.Y. Sept. 23, 2009) ..................... 15

*Anderson v. Creighton*, 483 U.S. 635, (1987)................................................. 19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ...................... ..........4

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011)................................................ 21

*Baker v. City of New York*, No. 01 CIV. 4888 (NRB), 2002 WL 31132880
    (S.D.N.Y. Sept. 26, 2002) .............................................................. 19

*Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418 (S.D.N.Y. 2012) ......................................5

*Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996) .................................... 19, 21

*Breitkopf v. Gentile*, -- F. Supp. --, 2014 WL 4258994 (E.D.N.Y. Aug. 29, 2014) .....................8

*Buehler v. City of Austin/Austin Police Dep't.*, No. 13-1100, slip op.
    (W.D. Tex. July 24, 2014) ..............................................................24

*Butterworth v. Smith*, 494 U.S. 624 (1990) ................................................23

*Cerrone v. Brown*, 246 F.3d 194 (2d Cir. 2001) ..............................................4

*Charles v. City of New York*, No. 11 CIV 2783 AT, 2014 WL 1284975
    (S.D.N.Y. Mar. 31, 2014) .............................................................. 8

*City of Houston v. Hill*, 482 U.S. 451 (1987) ................................................8, 20, 23

*Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 1994) ..................................................4

*Crawford v. Geiger*, 2014 WL 554469 (N.D. Ohio Feb. 10, 2014) .............................25

*Davis v. Stratton*, 575 F. Supp. 2d 410 (N.D.N.Y. 2008) *rev'd on other grounds
    and remanded*, 360 F. App'x 182 (2d Cir. 2010)....................................... 19

*Decker v. Campus*, 981 F. Supp. 851 (S.D.N.Y. 1997) ......................................7, 10

*Dowling v. City of New York*, No. 11-CV-4954 NGG RML, 2013 WL 5502867
    (E.D.N.Y. Sept. 30, 2013) .............................................................7, 9

*Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995) ......................................22, 23

*Gericke v. Begin*, 753 F.3d 1 (1st Cir.2014) ................................................24, 25

*Gilk v. Cunnife*, 655 F.3d 78 (1st Cir. 2011)................................................22

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..................................................4

*Hope v. Pelzer*, 536 U.S. 730 (2002)........................................................20

*Husain v. Springer*, 494 F.3d 108 (2d Cir. 2007)............................................18

*Jackson v. City of New York*, 939 F. Supp. 2d 219 (E.D.N.Y. 2013)...........................10

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007)....................................5

*Jones v. Harris*, 665 F. Supp. 2d 384 (S.D.N.Y. 2009).......................................1, 6

*Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495 (1952)........................................19

*Kelly v. Carlisle*, 622 F.3d 248 (3d Cir. 2010)..............................................23

*Khaytin v. Stern & Stern, Esqs.*, 2013 WL 5520000 (E.D.N.Y. Sep. 13, 2013)....................15

*Lennon v. Miller*, 66 F.3d 416 (2d Cir. 1995)................................................5, 7

*McClellan v. Smith*, 439 F.3d 137 (2d Cir. 2006)............................................4

*Mesa v. City of New York*, 2013 WL 31002 (S.D.N.Y. Jan. 3, 2013)............................24

*Mozzochi v. Borden*, 959 F. 2d 1174 (2d Cir. 1992)..........................................17

*Nagle v. Marron*, 663 F.3d 100 (2d Cir. 2011)..............................................20

*Ortiz v. City of New York*, 2013 WL 5339156 (S.D.N.Y. Sept. 24, 2013)......................24

*People v. Baker*, 20 N.Y.3d 354 (2013)......................................................11, 12, 13, 14

*People v. Bakolas*, 449 N.E.2d 738 (N.Y. 1983)..............................................15

*People v. Beam*, 866 N.Y.S.2d 564 (N.Y.Crim. Ct. 2008).....................................7

*People v. Case*, 365 N.E.2d 872 (N.Y. 1977)................................................8

*People v. Concannon*, 28 N.Y.2d 854 (1971)..................................................................16
*People v. Dietz*, 75 N.Y.2d 47 (1989)...........................................................................16
*People v. Fassinger*, 975 N.Y.S.2d 602 (City Ct. 2013)..............................................12
*People v. Ferreira*, 10 Misc.3d 441 (N.Y.Crim. Ct. 2005)............................................ 8
*People v. Griswald*, 170 Misc. 2d 38 (Co. Ct. 1996).............................................11, 13
*People v. Jensen*, 86 N.Y.2d 248 (1995)......................................................................17
*People v. Reese*, 5 Misc.3d 1030(A) (Dist. Ct. 2004) *rev'd on other grounds*, 11 Misc. 3d
    137(A) (App. Term 2006)..........................................................................................16
*People v. Stevenson*, 31 N.Y.2d 108 (1972)..................................................................17
*People v. Straci*, 174 Misc. 2d 926 (Just. Ct. Westchester Cty. 1997) .......................16
*People v. Tichenor*, 89 N.Y.2d 769 (1997)...................................................................14
*Petway v. City of New York*, No. 12-CV-279 (ARR)(LB), 2014 WL 839931
    (E.D.N.Y. Mar. 4, 2014).............................................................................................9
*Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014)........................................................21, 24
*Pomykacz v. Borough of W. Wildwood*, 438 F. Supp. 2d 504 (D.N.J. 2006) .............22
*Provost v. City of Newburgh*, 262 F.3d 146 (2d Cir. 2001) ........................................15
*Robinson v. Fetterman*, 378 F. Supp. 2d 534 (E.D. Pa. 2005).....................................22
*Saucier v. Katz*, 533 U.S. 194 (2001) .........................................................................18
*Scott v. Fischer*, 616 F.3d 100 (2d Cir. 2010) .......................................................21,24
*Sharp v. Baltimore City Police Dep't*, No. 11-cv-28888 (D. Md., filed Jan. 10, 2012) .........23
*Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000) ...................................22, 23
*Southerland v. City of New York*, 680 F.3d 127 (2d Cir. 2012), *cert. denied*,
    133 S. Ct. 980 (2013) .................................................................................................4
*Swartz v. Insogna*, 704 F.3d 105 (2d Cir. 2013) .........................................................14
*Szymecki v. Houck*, 353 Fed. Appx. 852 (4th Cir. 2009) .............................................23
*Terebesi v. Torreso*, 764 F.3d 217 (2d Cir. 2014) ..................................................21, 24
*Torres v. Vill. of Sleepy Hollow*, 379 F. Supp. 2d 478 (S.D.N.Y. 2005) .......................6
*Tunick v. Safir (Tunick I)*, 209 F.3d 67 (2d Cir. 2000) .........................................19, 21
*Tunick v. Safir (Tunick II)*, 228 F.3d 135 (2d Cir. 2000) ......................................19, 21
*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996)................................................................4
*Wilder v. Vill. of Amityville*, 288 F. Supp. 2d 341 (E.D.N.Y. 2003) *aff'd*,
    111 F. App'x 635 (2d Cir. 2004) ...............................................................................10
*Wilson v. Layne*, 526 U.S. 603 (1999).........................................................................21
*Wood v. The Town of E. Hampton*, No. 08-CV-4197 DRH AKT, 2014 WL 60087
    (E.D.N.Y. Jan. 7, 2014).............................................................................................11

## STATUTES

New York Penal Law § 195.05.........................................................................................7
New York Penal Law § 205.30.......................................................................................16
New York Penal Law § 240.20.......................................................................................10
New York Penal Law § 240.26(1)..................................................................................16

## RULES

*Individual Practices and Procedures, Judge Colleen McMahon*...............................1, 5

## CONSTITUTIONAL PROVISIONS

First Amendment ....................................................................................................passim

## PRELIMINARY STATEMENT

Defendant Rodriguez's motion for partial summary judgment on the basis of qualified immunity must fail. On the basis of the Complaint and Plaintiff Goodman's deposition testimony, the only materials to be considered on this motion under this Court's rules, *see Individual Practices and Procedures, Judge Colleen McMahon*, Point IV(E)(3); *Jones v. Harris*, 665 F. Supp. 2d 384, 394 (S.D.N.Y. 2009), Defendant lacked arguable probable cause to arrest Plaintiff Goodman for any of the Fourth Amendment related claims for false arrest and malicious prosecution. In addition, Defendant is not entitled to qualified immunity on Plaintiff's First Amendment retaliation claim since a reasonable jury could readily conclude that Defendant, in violation of clearly established First Amendment law, arrested Plaintiff in retaliation for her attempting to film police and Emergency Medical Technicians' ("EMTs") interactions with a woman in a wheelchair.

## FACTUAL STATEMENT

For almost three years, Ms. Goodman has regularly recorded New York City Police Department ("NYPD") members performing their duties and sometimes posts the recordings on social media. (Declaration of Herbert Teitelbaum, dated November 17, 2014, Ex. A, (hereinafter "Goodman Dep.") 20:21-22, 21:22-24, 43:23-44:10; Compl. ¶ 27) She believes her efforts help to ensure the police remain accountable to the public and help to prevent police misconduct. (Goodman Dep. 25:12-13; Compl. ¶ 27.)  When Ms. Goodman records the police she does not get too close to the activities she is recording and "like[s] to leave at least ten feet between" the police and herself.  (Goodman Dep. 53:21-24.)

On September 25, 2013, in the vicinity of Broadway and West 73rd Street in New York City, Ms. Goodman saw two EMTs interacting with a woman in a wheelchair with an apparently

dead battery and three NYPD officers up the block. (*Id.* at 52:25 -53:1, 53:3, 54:19-21, 59:1-4, 70:4-5, 51:25-52:2; Compl. ¶ 11.)

The police officers were "about 20 feet or so" from the woman in the wheelchair and the EMTs. (Goodman. Dep. 52:25 – 53:1.) Ms. Goodman walked approximately ten feet past the officers such that she was standing approximately 30 feet away from the woman in the wheelchair and EMTs, and approximately ten feet away from the NYPD officers. (Goodman. Dep. 53:13-18; Compl. ¶ 12.)

At this distance Ms. Goodman attempted to use her smartphone to film the events, (Goodman. Dep. 55:1-6; Compl. ¶¶ 11-12), but she discovered that her smartphone was out of memory. (Goodman. Dep. 10:2-8; Compl ¶ 13.)

While Ms. Goodman was attempting to record the events taking place, Defendant approached Ms. Goodman, held up his own phone camera and appeared to start recording her. (Goodman. Dep. 55:7-10, 55:16; Compl. ¶ 13.) Ms. Goodman told Defendant that she had a right to record police activity, but the police did not have a right to record her. (Goodman. Dep. 55:15-16, 59:20-21; Compl. ¶14.) It was Ms. Goodman's understanding that if an individual was not breaking any laws, as in her case, the officer did not have a right to film her. (Goodman. Dep. 56:1-3.)

As Defendant approached Ms. Goodman, she did not move towards him and, given the location of where she and the Defendant were standing her voice level was normal. (Goodman. Dep. 59:12-17, 59:24-25.) As the Defendant pursued the matter of his being filmed with Ms. Goodman and belligerently kept insisting that he had a right to film her, Ms. Goodman "raised [her] voice a little bit" in response, and used a profanity. (*Id.* at 61:22 -62:6, 69: 3-9, 71:5-6.)

2

During this exchange with Defendant, an EMT worker approached Ms. Goodman and said "That's enough." (*Id.* at 62:8, 62:16.)  This EMT worker was a large man standing two to three inches from her; Ms. Goodman felt he was "standing practically on me," and that he had approached her in a way that seemed he might hurt her. (*Id.* at 63-64:22-1, 64:4, 64:8-10.) She became frightened because "a large man was menacing" her. (*Id.* at 63:20; 64:2-4.)  Under these circumstance, Ms. Goodman responded to the EMT worker saying, "Are you fucking kidding me." (*Id.* at 63:8-9, 63: 16-17, 63:19-64:10.)

At the deposition, which took place over a year after her arrest, Ms. Goodman did not recall the EMT worker ordering her to move or step back.  (*Id.* at 62:17-18; 62: 19-24, 65:4-13.)

After the verbal exchange between Defendant and Ms. Goodman, and Defendant's filming Ms. Goodman because of her attempted filming, Defendant demanded to see Ms. Goodman's identification. When Ms. Goodman refused because she had done nothing wrong Defendant grabbed her arms, cuffed her with her arms behind her back, and told her she was under arrest.  (*Id.* at 63:9-11, 64:17-20; Compl. ¶ 15.)

During this entire episode on Broadway, Ms. Goodman never spoke with the woman in wheel chair, nor did she come between the police and this woman.  (*Id.* at 70:1-3,70:14-16.) Moreover, there is no indication in the record that the woman objected to Ms. Goodman.

No crowd had formed while Ms. Goodman and Defendant were exchanging words, and to the best of Ms. Goodman's knowledge, no bystanders were observing her interaction with Defendant and the EMT or her arrest.  (*Id.* at 71:7-10, 70:17-19, 71:15-16; Compl. ¶ 16.)  After Ms. Goodman was arrested and the police officers "threw" her in the police van, there were two or three onlookers. (Goodman Dep. 67:24-25, 70:19-20; 71:19-72:1.)

3

Ms. Goodman was arrested without reason or probable cause. (Compl. ¶ 16.) She did not resist being cuffed, nor did she resist the arrest. (*Id*) Given the sequence of events and the Defendant's conduct as described in this record, it is fair to conclude that the Defendant's actions were motivated or substantially caused by Ms. Goodman's attempt to record the events involving the woman in the wheel chair in violation of her First Amendment right. (*Id.*¶¶ 1, 16)

## ARGUMENT

Summary judgment cannot be granted if there is a genuine issue of material fact. *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In considering a summary judgment motion, "the district court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Defendant does not meet this heavy burden.

### POINT I - DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNIYT ON PLAINTIFF'S FOURTH AMENDMENT, FALSE ARREST AND MALICIOUS PROSEUCTION CLAIMS

#### A. The legal standard for qualified immunity in a summary judgment motion

"[A]police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Cerrone v. Brown,* 246 F.3d 194, 199 (2d Cir. 2001) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "Qualified immunity is an affirmative defense, and it is incumbent upon the defendant to plead [] and adequately develop that defense." *Southerland v. City of New York*, 680 F.3d 127, 141 (2d Cir. 2012) (citations omitted), *cert. denied*, 133 S. Ct. 980 (2013).

4

The right to be free from arrest without probable cause is clearly established, *see, i.e.,*

*Cook v. Sheldon,* 41 F.3d 73, 78 (2d Cir. 1994); thus, when a plaintiff brings a false arrest claim

the qualified immunity analysis turns on whether the police officer's probable cause

determination was objectively reasonable. *See Jenkins v. City of New York,* 478 F.3d 76, 87 (2d

Cir. 2007).

> An officer's determination is objectively reasonable if there was "arguable"
> probable cause at the time of arrest—that is, if officers of reasonable competence
> could disagree on whether the probable cause test was met. "Arguable" probable
> cause should not be misunderstood to mean "almost" probable cause. The
> essential inquiry in determining whether qualified immunity is available to an
> officer accused of false arrest is whether it was objectively reasonable for the
> officer to conclude that probable cause existed.

*Id.* (citations omitted). In the context of a summary judgment motion regarding probable cause,

"if any reasonable trier of fact could find that the defendants' actions were objectively

unreasonable, then the defendants are not entitled to summary judgment." *Lennon v. Miller,* 66

F.3d 416, 420-21.

1.  Defendant's Exhibit B Should be Excluded Under This Court's Individual Practice Rules

As an initial matter, by introducing and relying upon Defendant's Exhibit B, the 23 second

videotape which comprises a snippet of Ms. Goodman's interactions with Defendant and the

EMT worker, Defendant fails to comply with this Court's individual practice rules. *See*

*Individual Practices and Procedures, Judge Colleen McMahon,* Point IV(E)(3). As the Court has

stated:

> It is this Court's practice to decide motions for summary judgment based on
> qualified immunity only after the plaintiff has been deposed. If, on the plaintiff's
> telling of the story—supplemented by whatever non-conflicting evidence the
> defendant can submit—the defendants would still be entitled to qualified
> immunity, then summary judgment will be granted. If, on the other hand, facts
> material to the application of the qualified immunity doctrine are in dispute,
> summary judgment is not appropriate.

*Bektic-Marrero v. Goldberg,* 850 F. Supp. 2d 418, 426 (S.D.N.Y. 2012) (McMahon, J.)

The Court has explained its reasoning for this rule on several occasions:

> It is no defense to a claim of qualified immunity that the defendant did not do what plaintiff said he did. At this early stage of a lawsuit, before discovery takes place, *we are presuming that the plaintiff's version of events is true, so a court cannot take into account assertions by the accused officer that contradict the plaintiff's allegations.* Nothing in *Saucier* can be read to deprive the plaintiff of his Seventh Amendment right to have a jury resolve all disputed issues of material fact. If plaintiff's version of the facts is wrong and defendant's is correct, then the defendant will prevail, not on the ground of qualified immunity, but because he did nothing wrong.

*Jones v. Harris*, 665 F. Supp. 2d 384, 394 (S.D.N.Y. 2009) (McMahon, J.) (emphasis added); *see also Torres v. Vill. of Sleepy Hollow*, 379 F. Supp. 2d 478, 483-84 (S.D.N.Y. 2005) (McMahon, J.) ("unless the facts as asserted by plaintiff in the complaint (and, under my rules, in his deposition) could never be found by a reasonable trier of fact to constitute excessive force . . . an officer accused of using excessive force will ordinarily not be able to get out of a lawsuit prior to discovery on the ground of qualified immunity").

The video, which is only 23 seconds long, captures a very small portion of the interaction between Plaintiff and Defendant and the EMT worker; thus, it cannot accurately depict the event at issue. Moreover, even with respect to the 23 seconds depicted, Defendant misrepresents what is depicted, and asserts claims that are contradicted both by Plaintiff's deposition testimony and by the video itself. For example, Defendant claims the video depicts Ms. Goodman "yell. . . in a very loud voice." (Def. 56.1 ¶ ¶ 4, 5, 7, 12.) This assertion is not supported by the video, and is in direct contradiction of Ms. Goodman's deposition testimony that she raised her voice a bit. (Goodman Dep. 62:5-6, 71:5-6.) The video should be excluded under this Court's individual practice rules.[1]

---

[1] In the criminal case against Ms. Goodman, which was dismissed, the People failed to disclose that this videotape existed. *See People v. Debra Goodman*, Docket No. 2013NY074178, People's Voluntary Disclosure Form ¶ C(4) (not checking box indicating that photographs or

**B. Defendant did not have arguable probable cause to arrest Ms. Goodman for any of the charges**

1. Obstruction of Governmental Administration

Under New York law, a person is guilty of obstructing governmental administration ("OGA") when "he [or she] intentionally ... [1] prevents or attempts to prevent [2] a public servant from performing [3] an official function, by [4] means of intimidation, physical force or interference." Penal Law § 195.05; *Lennon* 66 F.3d at 424. As all four elements are necessary for a person to be guilty of OGA, if it was objectively reasonable for an officer to conclude that even one of the elements was missing, then the officer does not have arguable probable cause to arrest for OGA. *See Dowling v. City of New York*, No. 11-CV-4954 NGG RML, 2013 WL 5502867, at *4 (E.D.N.Y. Sept. 30, 2013).   Based on the Complaint and Plaintiff's deposition Defendant cannot show there was "arguable probable cause" to arrest Ms. Goodman for OGA.

First, it was not objectively reasonable for Defendant to believe that Ms. Goodman had the requisite intent. To be guilty of OGA,  a defendant must intend to prevent the public servant from lawfully engaging in a specific official function. *Decker v. Campus,* 981 F.Supp. 851, 858 n. 3 (S.D.N.Y. 1997); *People v. Beam,* 866 N.Y.S.2d 564, 567 (N.Y.Crim. Ct. 2008) ("[OGA requires] intentional insertion of one's self or one's intentions into steps taken by police officers to fulfill their duties."); *People v. Ferreira,* 807 N.Y.S.2d 832, 834 (N.Y.Crim. Ct.2005) ("criminal responsibility ...attach[es] ... only where a person intentionally impedes or defeats a governmental function..."). Here, the only relevant legitimate governmental function was assisting the woman in the wheelchair, and there is no evidence Ms. Goodman intended to hinder the police officer's assistance to this woman.  She was standing approximately 30 feet from the

---

drawings made by a  public servant existed)  and ¶ C(7) (not checking box indicating that tapes or other electronic recordings exist that the People intent to introduce at trial) (attached as Ex. B to Teitelbaum Decl.)

woman and EMT personnel, and approximately 10 feet from the police officers when she attempted to start filming. (Compl. ¶ 12; Goodman Dep. 52:25 – 53:1, 53:13-18). In addition, she never interacted with the woman in the wheelchair or came between this woman and the police. (Goodman Dep. 70:1-3; 70: 14-16).

Second, it was not objectively reasonable for Defendant to believe that Ms. Goodman used "intimidation, physical force or interference" within the meaning of the statute. OGA requires some physical interference with the official function; mere words alone are not enough. *See Breitkopf v. Gentile*, -- F. Supp. --, 2014 WL 4258994, at *32 (E.D.N.Y. Aug. 29, 2014) ("[T]he interference must be physical in nature at least in part."); *People v. Case*, 365 N.E.2d 872, 875 (N.Y. 1977) ("[M]ere words alone do not constitute 'physical force or interference' such as to support the charge of [OGA]."); *People v. Ferreira,* 10 Misc.3d 441, 807 (N.Y.Crim. Ct.2005) ("criminal responsibility…attach[es]… only where a person intentionally impedes or defeats a governmental function by means of physical force or interference. . . ." (citations omitted) (emphasis added). Defendant admits as much, citing *Breitkopf* for the requirement that, "[i]nterrelated conduct—actions coupled with words or conduct causing some physical reaction and dispersal"—is actionable." 2014 WL 4258994, at *32 (citation omitted). (In fact, the First Amendment protects the right "verbally to oppose or challenge police action," *City of Houston v. Hill,* 482 U.S. 451, 462-63 (1987), and the statute may not be construed to infringe upon that right.) Ms. Goodman did not engage in any physical interference of the officers' and EMT's assistance to the woman in the wheel chair, nor did she use any physical force or intimation. She did not even use any words that were intended to hinder their response to the woman.

Defendant implies that Plaintiff interfered with the officers' and EMT's assistance to the woman in the wheelchair because she was too close to the woman and the attending EMTs.

8

(Def. Br. at 10.)  However, being "in close proximity to [police activity]. . . alone does not provide probable cause to arrest Plaintiff for OGA." *Charles v. City of New York*, No. 11 CIV. 2783 AT, 2014 WL 1284975, at *5 (S.D.N.Y. Mar. 31, 2014). Moreover there is no per se rule as to how close a plaintiff must be to justify a police officer telling the plaintiff to step back. *See, e.g., Dowling*, 2013 WL 5502867, at *1 (plaintiff who was two to three feet from the officer was not too close).  Here, Ms. Goodman was about 30 feet from the woman in the wheelchair – farther than the Plaintiff in *Dowling* who was not considered "too close," and certainly a distance that an objectively reasonable police officer would not to consider her "too close." (Compl. ¶ 12; Goodman Dep. 52:25 – 53:1, 53:13-18). Moreover, the case Defendant cites, *Petway v. City of New York*, No. 12-CV-279 (ARR)(LB), 2014 WL 839931, at *6 (E.D.N.Y. Mar. 4, 2014), does not even support the claim that a police officer has probable cause to arrest an individual for OGA simply because s/he is too close to the scene of an incident. (Def. Br at 9).  In *Petway* the critical issue was not how close the plaintiff was to the incident, but that the plaintiff, who had *justifiably* been ordered to step back numerous times, failed to do so. *See id.*

Relying on Defendant's Exhibit B, the videotape that Defendant improperly submitted, *see* Section A.1, *supra*, Defendant implies there was arguable probable cause to arrest Ms. Goodman for OGA because she did not follow the EMT's order to move out of the way. (Def. Br. at 10.) On the evidence applicable to this motion– the Complaint and Plaintiff's deposition - Ms. Goodman never received an order to move back. (Goodman Dep. 62.8; 62:19-24; 65:11-13).

In addition, even if the Court relies upon the video evidence and believes there was an order to move back, Defendant still did not have arguable probable cause to arrest Plaintiff for OGA.  Critically:

> Failing to obey a police order, in and of itself, does not constitute a circumstance
> that gives rise to probable cause for an arrest for obstructing government

> administration.[Only] [w]hen failing to obey the order creates some other hazard or interference, it can rise to the level of obstruction necessary for obstructing government administration.

*Dowling*, 2013 WL 5502867, at *4 (citations omitted).  Similarly, as another recent decision has held, only if the order was justified, does failing to comply constitute probable cause to arrest for OGA.  *See Jackson v. City of New York*, 939 F. Supp. 2d 219, 230 (E.D.N.Y. 2013) ("Plaintiff's failure to comply with an (unjustified) order to exit her vehicle cannot, without more, create the predicate probable cause to justify her arrest for [OGA].").  Here, the purported order to step back was unjustified, and failing to comply does not create any hazard or interference with police work.  A reasonable jury could conclude that the alleged order was made with the goal of impeding Ms. Goodman's efforts to film the police interaction with the wheelchair.  Moreover as Ms. Goodman was so far away from the interaction (about 30 feet), no objectively reasonable police officer could conclude that there was any possible hazard or interference that could come about from Ms. Goodman standing where she was.  (Compl. ¶ 12; Goodman Dep. 52:25 – 53:1, 53:13-18).

The two cases that Defendant cites for the proposition that refusal to obey an order can give rise to an arrest for OGA are distinguishable because in both cases, the orders to disperse were justified, and failure to comply created a hazard. *See Wilder v. Vill. of Amityville*, 288 F. Supp. 2d 341, 345 (E.D.N.Y. 2003) *aff'd*, 111 F. App'x 635 (2d Cir. 2004) ([plaintiff] ignored three orders to move away from what was soon to be a zone of danger" and her presence in the area would have obstructed the designated municipal workers from completing a lawful task of removing a tree); *Decker v. Campus*, 981 F. Supp. 851 (S.D.N.Y. 1997) (plaintiff did not comply with order to step away from scene of a high-risk rescue operation, where officer was attempting to save someone's life).

2.  <u>Disorderly Conduct</u>

     Under New York Penal Law §240.20 "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:...2) [sh]e makes unreasonable noise; or...3) "[i]n a public place, [s]he uses abusive or obscene language or makes an obscene gesture." Since all elements are necessary for a person to be guilty of disorderly conduct, if it was objectively reasonable for an officer to conclude that even one of the elements was missing, then the officer does not have arguable probable cause to arrest for the offense. *See Wood v. The Town of E. Hampton*, No. 08-CV-4197 DRH AKT, 2014 WL 60087, at *11 (E.D.N.Y. Jan. 7, 2014) (officer would have had "probable cause to arrest, only if a reasonable person in the same circumstances would have believed that [Plaintiff's] conduct satisfied all three components of" the disorderly conduct statute). Based on the Complaint and Ms. Goodman's deposition, none of the required elements were present; thus, Defendant did not have arguable probable cause to arrest Ms. Goodman for disorderly conduct.

     Courts have emphasized the "the mens rea component, which requires proof of an intent to threaten public safety, peace or order (or the reckless creation of such a risk)," *People v. Baker*, 20 N.Y.3d 354, 359 (2013), and, relatedly, the threat of public harm or "breach of the peace," *see id; see also People v. Griswald*, 170 Misc. 2d 38, 41 (Co. Ct. 1996) (requiring "inconvenience, annoyance or alarm to a substantial segment of the public or ... a risk that a breach of the peace was imminent").

     *Baker*, the recent Court of Appeals decision on which Defendant relies, extensively discusses the mens rea and "public harm" requirements:

> The significance of the public harm element in disorderly conduct cases cannot be overstated. <u>In virtually all of our prior decisions, the validity of disorderly conduct charges has turned on the presence or absence of adequate proof of public harm.</u> To determine whether the record supports an inference that the requisite mens rea

was present, we have employed a contextual analysis that turns on consideration of many factors, including " the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances. We have clarified that the risk of public disorder does not have to be realized but <u>the circumstances must be such that defendant's intent to create such a threat (or reckless disregard thereof) can be readily inferred.</u> (citations omitted) (emphasis added).

*Baker*, 20 N.Y.3d at 359.

In applying these considerations to circumstances similar to Ms. Goodman's and conduct more egregious than Ms. Goodman's, the Court of Appeals held there was no probable cause for the arrest because the public harm requirement was not met. In *Baker*, the defendant approached the police officer, repeatedly swore at him and accused the officer of harassment. The court reasoned that there was no threat of public harm because the outburst was brief, lasting approximately 15 seconds; that the outburst occurred around dinner time in a heavily-populated city street "bustling" with car traffic and pedestrians; that incident was a verbal exchange only, not accompanied by menacing conduct; and that defendant's abusive statements were directed exclusively at a police officer—a party trained to defuse situations involving angry or emotionally distraught persons. *See also People v. Fassinger*, 975 N.Y.S.2d 602, 604 (City Ct. 2013) (no probable cause to arrest defendant who had made obscene gestures at police officer because the exchange did not create a risk that the incident could become a potential or immediate public problem, and, thus, did not create a risk of public harm).

Here, given the facts in the Complaint and deposition, it was not objectively reasonable for an officer to conclude that that Ms. Goodman had the requisite mens rea, nor was it objectively reasonable for an officer to conclude there was a threat of public harm. In many relevant ways Ms. Goodman's situation resembled the defendant's in *Baker*: both individuals used two profanities—but took no menacing conduct— on a public street bustling with traffic

12

and pedestrian activity (in Ms. Goodman's case, Broadway and 73rd St.); the interactions were brief; the interactions were solely between the individual (the defendant in *Baker* or Ms. Goodman) and law enforcement personnel who are "trained to defuse situations involving angry or emotionally distraught persons." *Baker*, 20 N.Y.3d at 357, 363.

Indeed, here, the circumstances are even less likely to cause a threat of public harm than in *Baker*. Nothing in the Complaint or deposition (or even the video) indicates there were bystanders observing or affected by the her verbal exchange with the officer and EMT worker or when she was arrested (Goodman Dep. 71:7-10, 70:17-19, 71:15-16;). After she was arrested and had raised her voice in response to the arrest, there were 2 or 3 onlookers. (*Id.* 67:24-25, 70:19-20; 71:19-72:1). Thus, these very few bystanders noticed her arrest, not her brief profane statements made prior to the arrest. In contrast, in *Baker* a crowd of approximately 10 people had gathered, and it was unclear whether the crowd was due to defendant's conduct or the arrest itself. *See Baker*, 20 N.Y.3d at 357, 363. Nothing in the Complaint or deposition (or even the video) shows that a crowd formed that "expressed [an] inclination, verbally or otherwise, to involve themselves in the dispute" or committed a breach of the peace, a requirement in *Baker* for determining there was a public harm. *Id.* at 363.

Moreover, contrary to Defendant's implication, the EMT and Defendant not attending to the woman in the wheel chair does not constitute a "public harm" within the meaning of the statute. (Def. Br. at 12) First, there were two other officers (Goodman Dep. 52:2) and one other EMT personnel (*Id.* at 70:4-5) to attend to the woman in the wheelchair, so there was no threat of harm to this woman, nor was there a threat of breach of the peace or threat harm to a "substantial segment of the public." *Griswald*, 170 Misc. 2d at 41; *see also Baker*, 20 N.Y.3d at *359*. In addition, and very significantly, whatever inconvenience there was to the wheelchair bound

13

woman was not caused by Ms. Goodman, but rather by Officer Rodriguez and the EMT.  At her deposition Plaintiff testified that: (1) officer Rodriguez approached Ms. Goodman (Goodman Dep. 55:7-10); (2) officer Rodriguez became belligerent, and Ms. Goodman merely raised her voice and cursed *in response* to officer Rodriguez's belligerence (*id.* at. 61:22-62:6); and (3) the EMT worker approached her " in a way that made her think he could hurt her" (*id.* at 64:8-10; 62:8), and was standing 2-3 inches from her (*id.* at 63-64:22-1).

In sum, on the facts in the Complaint and Ms. Goodman's deposition, there is no evidence that there was a risk of public harm or threat to public safety, or that Ms. Goodman intentionally threaten public safety or recklessly create a risk to public safety.  In fact, Defendant cites no facts that even imply Ms. Goodman had the requisite mens rea.  Given the lack of these two essential elements, on this record, there was no arguable probable cause to arrest her for disorderly conduct.

In addition, contrary to Defendant's assertions, the fact that Ms. Goodman swore twice is not sufficient to give an officer arguable probable cause to arrest for disorderly conduct. Numerous courts have emphasized that speech alone – even abusive or obscene language – are never or rarely enough to satisfy the disorderly conduct statute. *See People v. Tichenor*, 89 N.Y.2d 769, 775 (1997) ("Significantly, the disorderly conduct statute … applies to words and conduct. … [the] statute … does not circumscribe pure speech directed at an individual. Rather, it is directed at words and utterances coupled with an intent to create a risk of public disorder…"); *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Tichenor*); *Baker*, 20 N.Y.3d at 363 ("isolated statements using coarse language to criticize the actions of a police officer, unaccompanied by provocative acts or other aggravating circumstances, will rarely

afford a sufficient basis to infer the presence of the "public harm" mens rea necessary to support a disorderly conduct charge.").

Defendant's argument that the unreasonable noise element was met is similarly unpersuasive. "Unreasonable noise" within the context of the disorderly conduct statute means "a 'noise of a type or volume that a reasonable person, under the circumstances, would not tolerate.'" *Provost v. City of Newburgh*, 262 F.3d 146, 159 (2d Cir. 2001) (quoting *People v. Bakolas*, 449 N.E.2d 738, 740 (N.Y. 1983)).  Though Defendant claims "Plaintiff[] [was] yelling and using a very loud voice in close proximity to the police and EMTs" (Def. Br. at 12), the record does not support this assertion.  Rather, Ms. Goodman testified, "As the officer got more belligerent about taking my photograph, I raised my voice." (Goodman Dep. 71:5-6). (Moreover, though the video is not permissible evidence, it does not show Ms. Goodman yelling or even speaking loudly given she was standing on a major avenue in Manhattan and at a busy intersection.) A reasonable jury could conclude that there was not probable cause to believe that, given the circumstances, Ms. Goodman's "raised voice" constituted "unreasonable noise."

*Adonis v. Court Officer Coleman*, cited by Defendant, for the proposition that "'commotion' by 'yelling and screaming' in the security area of a courthouse" could violate this subsection, is inapplicable.  2009 WL 3030197, at *8 (S.D.N.Y. Sept. 23, 2009). First, that case reflects the court's post-trial conclusion, whereas here where a factfinder weighing the evidence could conclude that the volume of Ms. Goodman's voice was not intolerable.  Moreover, in *Adonis* the yelling caused a commotion and spectators; whereas here, Ms. Goodman has testified that as far as she knows there were no bystanders when  observing or affected by the her verbal exchange with the officer and EMT worker or when she was arrested, and the 2-3 onlookers formed as a result of her arrest. (Goodman Dep. 71:7-10, 70:17-72:1, 71:15-16).

15

3. <u>Harassment (second degree) and Resisting Arrest</u>

Defendant did not raise the issue of probable cause to arrest Ms. Goodman for harassment and resisting arrest and, therefore, they are waived for the purposes of this motion. *See Khaytin v. Stern & Stern, Esqs.*, 2013 WL 5520000, at *5 (E.D.N.Y. Sep. 13, 2013) (refusing to consider argument raised for the first time on reply). But for the Court's convenience we briefly address the lack of arguable probable cause for these two charges.

Under N.Y. Penal Law § 240.26(1) a person is guilty of harassment in the second degree if, "with the intent to harass, annoy or alarm another person he or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same." Threatening words violate the statute only when they constitute a genuine threat, i.e. the record shows that it is serious and that it is reasonable to take it seriously. *People v. Dietz*, 75 N.Y.2d 47, 53-54 (1989). "[I]nten[t] to harass, annoy or alarm" is required, *People v. Concannon*, 28 N.Y.2d 854 (1971), and such intent is lacking when the conduct is "clearly spontaneous in nature rather than thought out in advance." *People v. Straci*, 174 Misc. 2d 926, 927 (Just. Ct. Westchester Cty. 1997). No facts in the Ms. Goodman's deposition indicated she had this requisite intent. In addition, "an arrest for harassment is not lawful where the allegedly harassing conduct is done in response to illegal police action." *People v. Reese*, 5 Misc. 3d 1054(A), PIN (Dist. Ct. 2004). Thus any actions Ms. Goodman took after her wrongful arrest could not be the basis for arguable probable cause to arrest her for harassment. In sum, it was not objectively reasonable for Defendant to conclude there was probable cause to arrest plaintiff for harassment in the second degree.

Resisting arrest requires that a person "intentionally prevent[] or attempt[] to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person."

N.Y. Penal Law § 205.30. One of the elements is that the arrest must be "authorized," meaning it must be "premised on probable cause." *People v. Jensen*, 86 N.Y.2d 248, 253 (1995).  The foregoing discussion demonstrates that Defendant did not have arguable probable cause to arrest Plaintiff for any of the charges; thus, the arrest was not authorized and Plaintiff could not have "resisted."  Moreover, based on the facts in the deposition Ms. Goodman did not have the requisite intent, because she did not engage in any conduct that was specifically intended to prevent her arrest.  *See, .e.g., People v. Stevenson*, 31 N.Y.2d 108, 112 (1972).

**POINT II  - DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNIYT ON PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM**

Ms. Goodman claims that Defendant violated her righters under the First Amendment and New York State Constitution by arresting her in retaliation for attempting to record Defendant and EMT personnel who were interacting with a woman in a wheelchair. (Compl. ¶ 1.) Defendant contends that Officer Rodriguez is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim for two reasons, neither of which is correct.

First, he claims there was arguable probable cause to arrest plaintiff for OGA and disorderly conduct. (Def. Br. at 13.) As explained in Point I, *supra*, Defendant failed to establish arguable probable cause for either of these offenses.  As there was no probable cause to arrest Ms. Goodman for any of the offenses, and as Defendant approached Ms. Goodman because she was filming (Goodman. Dep. 55:7-10, 55:16; Compl. ¶ 13.) a reasonable jury could conclude that Defendant's actions were motivated by Ms. Goodman's filming and exercising her rights. *Mozzochi v. Borden*, 959 F. 2d 1174, 1179 (2d Cir. 1992), the case cited by Defendant in which qualified immunity protected a defendant in a First Amendment retaliation case, is inapplicable because, unlike here, in that case there actually was probable cause to arrest  for the charged offense of sexual harassment.

17

Second, Defendant claims he is entitled to qualified immunity because "neither the United States Supreme Court nor the Second Circuit Court of Appeals had ruled that plaintiff had a protected First Amendment right to film as of the date of this incident," and therefore Officer Rodriguez "did not violate a 'clearly established' right of plaintiff." (Def. Br. at 13-14.) However, as explained, *infra*, this right is "clearly established." Second Circuit precedent establishes that individuals have a right to film in public, and the case law should have provided Defendant with notice that recording police in public is protected speech. In addition, at the time of Ms. Goodman's arrest, there was a consensus among courts that the right to film police activity was protected, and this consensus was sufficient to clearly establish the right within the Second Circuit.

## A. The right to film in public was clearly established at the time of the arrest

1. Second Circuit authority establishes that there is a right to film in public

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). It is well established that:

> "[T]he right . . . need not be limited to the specific factual situation in which that right was articulated. This is because the Supreme Court has declined to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, and has, instead, chosen a standard that excludes such immunity if in the light of pre-existing law the unlawfulness [is] apparent."

*Husain v. Springer*, 494 F.3d 108, 131 (2d Cir. 2007) (internal citations and quotation marks omitted) (emphasis added).

The First Amendment right to film in public was clearly established at the time of Ms. Goodman's arrest and, thus, the unlawfulness of Ms. Goodman's arrest in retaliation for filming was apparent. The Supreme Court and Second Circuit have held that photography and

videography are forms of speech protected by the First Amendment. *See Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952) (holding that films are a protected form of speech); *Bery v. City of New York*, 97 F.3d 689, 694-96 (2d Cir. 1996) (holding that visual media are entitled to full First Amendment protection). Further, the Second Circuit has more specifically held that the act of making photography is protected by the First Amendment. *Tunick v. Safir (Tunick II)*, 228 F.3d 135, 137 (2d Cir. 2000) (upholding preliminary injunction barring interference with photo shoot because of "clear likelihood of [photographer]'s success on the merits" of First Amendment claims); *Tunick v. Safir (Tunick I)*, 209 F.3d 67, 82 (2d Cir. 2000) (noting that photo shoot was "entitled to some First Amendment protection"). In *Tunick II*, the Second Circuit implicitly recognized that First Amendment protection for photographs and films would be meaningless if the act of creating photographs and films were not protected. Several district court cases have also held that photography is protected by the First Amendment. *See, e.g., Baker v. City of New York*, No. 01 CIV. 4888 (NRB), 2002 WL 31132880, at *5 (S.D.N.Y. Sept. 26, 2002); *Davis v. Stratton*, 575 F. Supp. 2d 410, 421 (N.D.N.Y. 2008) *rev'd on other grounds and remanded*, 360 F. App'x 182 (2d Cir. 2010).

While the facts of the present case are not precisely the same as *Bery, Tunick II or Tunick I*, they are sufficiently close to have provided the Defendant with notice that retaliation for exercising that right was unlawful. "'[T]he very action in question' need not have been the subject of a holding in order for a right to be clearly established. If the 'contours of the right [are] sufficiently clear,' then 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Nagle v. Marron*, 663 F.3d 100, 115 (2d Cir. 2011) (quoting *Anderson*, 483 U.S. at 640; *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)) (same).

The Second Circuit's decision in *Nagle* is instructive. There, the defendants attempted to create a carve-out from a clearly established First Amendment right, claiming that the First Amendment right to be free from retaliation in response to protected speech was not "clearly established" because the alleged retaliation occurred years after the speech at issue and in a different geographic community. *Id.* The defendants argued that no Second Circuit case addressed whether speech remained protected over time and space. *Id.* The Second Circuit rejected the defendant's argument and held the law was clearly established since the defendant "point[ed] to no basis on which a reasonable official might conclude that [First Amendment protection] would wane, thereby permitting the official to retaliate for the speech." *Id.*

Like the *Nagle* defendants, the Defendant here cites no case suggesting that retaliation in response to videography in public is not protected under the First Amendment such that the defendant officer could reasonably believe otherwise. And, in light of longstanding precedent establishing First Amendment protections for "criticism and challenge directed at police officers," *City of Houston v. Hill*, 482 U.S. 451, 461 (1987), it would be particularly incongruous for a carve-out to exist leaving the public filming of police officers unprotected. Defendant does not even attempt to argue that police officers should be allowed to retaliate against members of the public for videotaping their actions, and, significantly, the NYPD's own policies recognize this right by explicitly barring the arrest of observers videotaping police activity. (Compl. ¶ 43.)

For these reasons, the First Amendment right to film police activity was clearly established in the Second Circuit.

2. At the time of Ms. Goodman's arrest, there was also a consensus among courts that the First Amendment protects the right to record police activity in public

In addition to the Second Circuit decisions in *Bery, Tunick II or Tunick I,* the right to record police officers was clearly established by a consensus of the circuits at the time of Ms.

20

Goodman's arrest, and this consensus was sufficient to provide notice to the Defendant that the right was clearly established. Four Circuits specifically held that there is a First Amendment right to record police officers.  Instead of addressing these appellate level cases, Defendant relies on a single, incorrectly decided district court opinion.

Precedent from outside the Second Circuit is sufficient to show that a right is clearly established. Recently the Second Circuit reiterated this point:

> To determine whether the relevant law was clearly established, we consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law. *See Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010). <u>Even if this Court has not explicitly held a course of conduct to be unconstitutional, we may  nonetheless treat the law as clearly established if decisions from this or other circuits "clearly foreshadow a particular ruling on the issue."</u> *Id.*

*Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) (internal quotation marks omitted) (emphasis added).  The *Terebesi* court further underscored this point that district courts may look to decisions in other circuits stating, "[w]e do not think that, as some decisions in this Circuit have suggested, '*[o]nly* Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established.'" *Id.* at n. 12 (emphasis original) (citation omitted). *Terebesi* is consistent with recent Supreme Court cases which have held that "a robust consensus of cases of persuasive authority" demonstrates that a right is clearly established for qualified immunity purposes.  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014); *see also Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011); *Wilson v. Layne,* 526 U.S. 603, 617 (1999).

In light of the long-established right to observe and document the conduct of government officials, the First, Seventh, Ninth, and Eleventh Circuits had all unambiguously held that there was a right to film police activity in public before the time of Ms. Goodman's arrest. That right

therefore was clearly established. *See ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595-608 (7th Cir.

2012); *Gilk v. Cunnife*, 655 F.3d 78 (1st Cir. 2011); *Smith v. City of Cumming*, 212 F.3d 1332

(11th Cir. 2000); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995); *see also Pomykacz v.

Borough of W. Wildwood*, 438 F. Supp. 2d 504, 513 & n. 14 (D.N.J. 2006); *Robinson v.

Fetterman*, 378 F. Supp. 2d 534, 541 (E.D. Pa. 2005).

In *Gilk,* the First Circuit considered the First Amendment right to film police activity in

public where the plaintiff, after coming upon an arrest in a public park, videotaped the arrest

from a distance of about ten feet because he was concerned that the police officers were

engaging in misconduct. 655 F.3d at 79-80. The plaintiff was ultimately arrested for violating

Massachusetts's wiretap statute. *Id.* at 80. The court answered the question before it—"is there a

constitutionally protected right to videotape police carrying out their duties in public?" *id.* at

82—as follows: "Basic First Amendment principles, along with case law from this and other

circuits, answer that question unambiguously in the affirmative." *Id.*

In accordance with the First Circuit's decision, the Seventh Circuit explicitly rejected the

claim that "openly recording what police officers say while performing their duties in traditional

public fora—streets, sidewalks, plazas, and parks—is wholly unprotected by the First

Amendment." *ACLU of Illionis*, 679 F.3d at 594. It instead concluded that there was a clear

likelihood that the plaintiff would succeed on its claim that the statute at issue violated the First

Amendment because the statute "interfere[ed] with the gathering and dissemination of

information about government officials performing their duties in public." *Id.* at 600.

In addition, in 1995 and 2000, respectively, the Ninth and Eleventh Circuits reversed

decisions granting summary judgment to police officers in cases where the plaintiffs alleged that

they were subjected to retaliation for filming police activity in public. *See Smith*, 212 F.3d at

1333 ("[W]e agree with the Smiths that they had a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct."); *Fordyce*, 55 F.3d at 439 (recognizing that a plaintiff who alleged a police attacked him in an attempt to prevent him from for videotaping a public demonstration had a "First Amendment right to film matters of public interest").

The two additional Circuit court cases addressing the question of whether officers were entitled to qualified immunity in cases where a plaintiff claimed a First Amendment right to record had been violated do not undermine this conclusion. *See Kelly v. Carlisle*, 622 F.3d 248 (3d Cir. 2010); *Szymecki v. Houck*, 353 Fed. Appx. 852 (4th Cir. 2009) (per curiam). *Kelly* is distinguishable because it did not involve the First Amendment right of bystanders to record police activity, but the right of a person subject to a traffic stop to film during the stop. 622 F.3d at 262. *Szymecki*, which is unpublished and without precedential effect, concluded that the right to record police activity was not clearly established at some point before 2009—before the First and Seventh Circuit decisions cited above—and did not analyze whether the right existed. 353 Fed. Appx. at 853.

Moreover, the U.S. Department of Justice filed a Statement of Interest in a case with similar facts to this one, urging the Court to hold that "The First Amendment protects the rights of private citizens to record police officers during the public discharge of their duties." Statement of Interest of the United States, *Sharp v. Baltimore City Police Dep't*, No. 11-cv-28888, at *4-5 (D. Md., filed Jan. 10, 2012) (attached as Ex. C to Teitelbaum Decl.). The Department of Justice's reasoning relied upon all the four Circuit court cases holding that individuals had a right to record police officers, and the fact that speech relating to alleged government misconduct, including police misconduct, is protected by the First Amendment. *Id.* at *4-6 (citing, *inter alia*,

23

*Butterworth v. Smith,* 494 U.S. 624, 632 (1990); *City of Houston, Tex. v. Hill,* 482 U.S. 451, 461

(1987)). In sum, there is no question that there was a consensus that the right to film police

activity existed at the time of Ms. Goodman's arrest.[2]

  Defendant relies on a single district court case, *Ortiz v. City of New York,* 2013 WL

5339156 (S.D.N.Y. Sept. 24, 2013), which was incorrectly decided. (Def. Br. at 14.)  This Court

should disregard *Otiz* because that court employed the wrong standard to determine whether the

right to film police activity was clearly established. Specifically, *Ortiz* held that the right was not

clearly established because neither the Supreme Court nor Second Circuit had not ruled on this

issue. *Id* at *4.  Thus, *Ortiz* failed to acknowledge that authority from outside the Second Circuit

is sufficient to demonstrate that a right is clearly established when there is no controlling Second

Circuit opinion. *See Terebesi,* 764 F.3d at 231; *Scott,* 616 F.3d at 105; *see also Plumhoff,* 134 S.

Ct. at 2023. *Mesa v. City of New York,* 2013 WL 31002 (S.D.N.Y. Jan. 3, 2013), not cited by

Defendant, makes the same mistake as *Ortiz.*  It held that, notwithstanding its agreement with the

four Circuit Courts that the right to record police officers "fits comfortably" within the First

Amendment, the right to record police officers had not been clearly established because the

Second Circuit had not ruled on the issue, the right had not been clearly established.  This court

should not credit *Ortiz* or *Mesa.*

  In consideration of the unanimous view of the Circuit courts that have addressed this

issue in published opinions, Plaintiff submits that this Court should  follow the two district court

and First Circuit that have recently ruled that the right to film police activity in public was

---

[2] The fact that Ms. Goodman attempted but was unable to record Officer Rodriguez is irrelevant.
In a similar situation, where a plaintiff attempted to record police officers but was unable to
because her camera did not record, the First Circuit noted that the plaintiff's inability to record
was immaterial. *Gericke v. Begin,* 753 F.3d 1, n.2 (1st Cir. 2014). It reasoned that the plaintiff's
"First Amendment right does not depend on whether her attempt to videotape was frustrated by a
technical malfunction." *Id.*

clearly established by September 2013, the date Ms. Goodman was arrested. *See Buehler v. City of Austin/Austin Police Dep't.*, No. 13-1100, slip op. at 20 (W.D. Tex. July 24, 2014) (attached as Ex. D to Teitelbaum Decl.) (citing the "robust consensus among circuit courts of appeals" in concluding that "the right to photograph and videotape police officers as they perform their official duties was clearly established at the time of [the plaintiff]'s arrests"); *Crawford v. Geiger*, 2014 WL 554469, at *10 (N.D. Ohio Feb. 10, 2014) ("[A]t the time of the August, 2012, encounter, the First, Seventh, Ninth, and Eleventh Circuits had issued clear and consistent opinion finding that the First Amendment right to openly record police activity existed. There was no indistinguishable circuit opinion to the contrary."); *Gericke v. Begin*, 753 F.3d 1 (1st Cir.2014) (ruling that in 2010 plaintiff had a clearly established First Amendment right to film police during a traffic stop, and, thus, denying the officer qualified immunity). In sum, the Defendant is not entitled to qualified immunity.

## CONCLUSION

Defendants' motion for partial summary judgment should be denied.

Dated:        November 17, 2014
              New York, New York

                                    SIEGEL TEITELBAUM & EVANS LLP

                                    _____/s/_____
                                    By Herbert Teitelbaum

                                    Norman Siegel
                                    Herbert Teitelbaum
                                    Sharon Sprayregen
                                    260 Madison Avenue, 22nd Floor
                                    New York, NY 10016
                                    (212) 455-0300
                                    hteitelbaum@stellp.com

                                    *Attorneys for Plaintiff*

25