UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/18/15

DEBRA GOODMAN,

                                   Plaintiff,        14 Civ. 5261 (CM)

               -against-

THE CITY OF NEW YORK, et. al.,

                                   Defendants.

----------------------------------------------------------------x

**PRELIMINARY STATEMENT**

Defendant Police Officer Steven Rodriguez, the only individually named defendant in this case, has moved for summary judgment dismissing some of the plaintiff's claims on the ground that he is qualifiedly immune from suit. A videotape made contemporaneously with the plaintiff's arrest reveals that the officer had at the very least arguable probable cause to arrest plaintiff; plaintiff's self-serving testimony to the contrary has no probative value, for the reasons articulated by the United States Supreme Court in Scott v. Harris, 550 U.S. 372 (2007). Therefore, Rodriguez's motion is granted, and the plaintiff's Fourth Amendment claims for false arrest and malicious prosecution, as well as her First Amendment claims against him, are dismissed with prejudice. No motion was made for summary judgment dismissing plaintiff's excessive force claim, so that issue will be litigated.

**FACTUAL STATEMENT**

The facts set forth herein are based upon plaintiff's admissions in her deposition and complaint, as well as what is reflected on P.O. Rodriguez's video of a portion of the incident. For purposes of this motion, defendant is limiting the facts relied on to (1) plaintiff's version of

1

what happened, and (2) the indisputable video evidence. Obviously, defendant is not thereby precluding himself from offering evidence once this motion is decided.

Plaintiff is a citizen who frequently films or photographs police officers and other public officials in the performance of their duties. She has been recording police "interactions" with citizens for almost three years. (Goodman EBT at 21). She keeps videos and still photographs that, in her opinion, demonstrate official misconduct (Goodman EBT at 25); she also posts such videos and photographs on Facebook, Twitter and YouTube (Goodman EBT at 44).

In the early evening hours of September 25, 2013, EMT personnel were helping a woman who was confined to a motorized wheelchair in the vicinity of Broadway and 73rd Street, New York, New, York. The chair had ceased operating because of a battery problem. (Defendant's Local Rule 56.1 Statement, ¶ 1). Three police officers, including defendant P.O. Steven Rodriguez, were present at the scene, about 20 feet away from where the EMTs were attending the woman. (Defendant's Local Rule 56.1 Statement, ¶ 2; Goodman EBT at 52–53).

Plaintiff was walking north on Broadway when she encountered this activity. She decided that she should record this particular "interaction" – apparently because she overheard one of the EMTs telling the woman, "You can't just call 911 when you run out of juice." (Goodman EBT at 54). Plaintiff walked about 10 feet beyond where the officers were standing – because she "always like[s] to leave at least ten feet between me and the police" (Goodman EBT at 53) – and held up her smartphone to try to record whatever might happen. Her phone did not record anything because it was "out of memory." (Defendant's Local Rule 56.1 Statement, ¶ 3)

P.O. Rodriguez, however, did record a portion of his interaction with plaintiff – in his words, to "cover myself" because "I don't know what you're about." This is a transcript of what can be heard on the videotape made by P.O. Rodriguez after he approached plaintiff:

2

O1 (Rodriguez): Is there anything wrong ma'am, is there anything I can help you with?

DF: (Plaintiff): Yes I was just going to tape your interaction and now you're breaking the law

O1: Okay and now I'm taping your interaction

DF: No, you're breaking the law no

O1: Ma'am I'm covering myself I don't know what you're about

DF: No, no, no, no, no

O1: You're getting a little angry ma'am, you gotta calm yourself down

DF: When you're in uniform, you don't have...

O1: We're working on something ma'am....

O2: Would you go over there now, I have a patient here...

DF: Get your hand out of my face

O2: Could you move out of the way, we have a patient

DF: Are you fucking.....

Although the video tape did not capture the entirety of what Plaintiff said, Plaintiff herself testified that she said, "Are you fucking kidding me?" (Defendant's Local Rule 56.1 Statement, ¶ 7; Goodman EBT at 63). Immediately after she said that, she was arrested.

Plaintiff believed that the officer had no right to film her because she was not breaking any law (Goodman EBT at 55-56). She testified that Rodriguez was about three feet from her – "normal talking distance" (Goodman EBT at 55) – when they "exchanged words" (at least two of which were "fuck you," see Goodman EBT at 69) and "disagreed" about whether he had the right to videotape her. (Defendant's Local Rule 56.1 Statement, ¶ 4; Goodman EBT at 61). When their argument took place, plaintiff estimated that she was standing about 20 feet from the EMT technicians who were working with the wheelchair-bound woman. (Defendant's Local Rule 56.1

3

Statement, ¶¶5, 9). The video does not show how far plaintiff was from the EMTs and the woman in the wheelchair, because of the location of P.O. Rodriguez, who was, according to plaintiff, standing about three feet from her while recording her.

Plaintiff testified that she was speaking to the officer in her "normal" and "basic" tone of voice (Goodman EBT at 59), although she admitted, "I raised my voice a little" as their interaction proceeded (Goodman EBT at 62).

At her deposition Plaintiff repeatedly denied that the EMT technician who came up to her asked her to "move out of the way." She testified that the EMT technician said only "that's enough" when he/she approached. (Goodman EBT at 62-63). Plaintiff also testified at her deposition that she was never "asked to step back" or "move back" or "go away" from the vicinity of the incident. However, on the video an officer (not O1, who is Rodriguez, the officer who was videotaping plaintiff over her objection, but a different officer, with a different voice) can be heard saying both , "Move out of the way," and "Would you please get over there," to plaintiff.   (Defendant's Local Rule 56.1 Statement, ¶ 10, 11). Plaintiff's full response to this order, by her own admission, was, "Are you fucking kidding me?"

After Plaintiff was arrested, she was charged with, among other things, obstruction of governmental administration (New York Penal Law 195.05) and disorderly conduct (New York Penal Law 240.20(3)). (Defendant's Local Rule 56.1 Statement, ¶ 8). The charges against plaintiff were eventually dismissed, but on "speedy trial" grounds rather than on the merits. (Defendant's Local Rule 56.1 Statement, ¶ 13).

## DECISION

### A.    Legal Standard for Summary Judgment

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995); Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990). To survive summary judgment, however, the non-moving party must produce evidence to support her case and "may not rely simply on conclusory statements or on contentions that the [admissible evidence] supporting the motion [is] not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). Further, evidence that is "merely colorable or not significantly probative" is insufficient to defeat a motion for summary judgment. Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 346 (2d Cir. 1999); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998).

It is well-settled that the party opposing a motion for summary judgment "cannot rely on conclusory statements in the pleadings or insupportable allegations made by affidavit." Cornett v. Sheldon, 894 F. Supp. 715, 724 (S.D.N.Y. 1995) (citing Wyler v. United States, 725 F.2d 156, 160 (2d Cir. 1983)). In particular, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts

the affiant's previous deposition testimony." Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996.)

Further, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable juror could believe it, a court should not adopt that version of events for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). In Scott, the United States Supreme Court ruled that a court confronted with a motion for summary judgment should not conclude that a plaintiff's testimony raised a genuine issue of disputed fact when that testimony was contradicted by a video recording of the very incident to which the testimony related. Id. Significantly, the Scott ruling came in the context of a motion for summary judgment on the ground of qualified immunity, which is the context presently confronting the court.

## B.     Legal Standard for Qualified Immunity

The United States Supreme Court recently summarized the law on the doctrine of qualified immunity:

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.

Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012) (citations and internal brackets and quotation marks omitted). The standard is a "'forgiving'" one. Amore v. Novarro, 624 F.3d 522, 531 (2d Cir. 2010):

6

> In an unlawful arrest action, an officer is subject to suit only if his judgment was so flawed that no reasonable officer would have made a similar choice. A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does. Id. (citations and internal quotation marks and ellipsis omitted).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and brackets omitted). As explained by the Second Circuit, "existing precedent must have placed the statutory or constitutional question beyond debate." Fabrikant v. French, 691 F.3d 193, 213 (2d Cir. 2012) (citing Ashcroft v. Al-Kidd, 131 S. Ct. 2074, 2083 (2011)). The United States Supreme Court has stated that the right the official is alleged to have violated must have been "clearly established in a more particularized, and hence more relevant, sense." Saucier v. Katz, 533 U.S. 194, 202 (2001) (internal quotations omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [governmental official] that his conduct was unlawful in the situation he confronted." Id.

Even if the right at issue was clearly established in certain respects, "an officer is still entitled to qualified immunity if officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." Walczyk v. Rio, 496 F. 3d 139, 154 (2d Cir. 2007) (internal citations omitted). Qualified immunity is applicable regardless of "whether the government official's error is a mistake of law, fact or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009).

"'The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.'" Amore, 624 F3d at 536. Even in the absence of probable cause, this Court, for the

7

purpose of determining whether an officer is entitled to qualified immunity, will "examine whether there is 'arguable probable cause.'" Id.

> Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.  In deciding whether an officer's conduct was objectively reasonable for purposes of qualified immunity, [this Court] look[s] to the information possessed by the officer at the time of the arrest, but [this Court] do[es] not consider the subjective intent, motives, or beliefs of the officer.  Id. (citations and internal quotation marks omitted).

Id. See also, Alhovsky v. Paul, 406 F. App'x 535, 536 (2d Cir. 2011). "In deciding whether an officer's conduct was 'objectively reasonable' for purposes of qualified immunity, [the Second Circuit] look[s] to the information possessed by the officer at the time of the arrest." Amore, 624 at 536.  "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995).

**C.     Legal Standard for Probable Cause to Arrest**

Probable cause is a complete defense to an action for false arrest or malicious prosecution.  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003).   Defendant argues that he had probable cause to arrest plaintiff and submits that, at the very least, there was "arguable probable cause" for plaintiff's arrest.

"A court assessing probable cause must 'examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" Marcavage v. City of New York, 689 F.3d 98, 109 (2d Cir. 2012) (quoting Maryland v. Pringle, 540 U.S. 366 (2003)).

Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an

offense has been committed by the person to be arrested." Singer v. Fulton County Sheriff, 63

F.3d 110, 119 (2d Cir. 1995) (citing O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir.

1993)); Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003). Probable cause requires only

a probability, not an actual showing, of criminal activity. Illinois v. Gates, 462 U.S. 213, 243

n.13 (1983); Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997);

Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 354 (S.D.N.Y. 1992), aff'd, 993 F.2d

1534 (2d Cir. 1993). Moreover, the validity of an arrest does not depend upon an ultimate

finding of guilt or innocence. Pierson v. Ray, 386 U.S. 547, 555 (1967); Weyant v. Okst, 101

F.3d 845, 852 (2d Cir. 1996). Thus, whether the suspect was later acquitted of the charges for

which he was arrested is irrelevant to a determination of probable cause at the time of arrest.

Michigan v. DeFillippo, 443 U.S. 31, 36 (1979).

## D.   There Was Arguable Probable Cause to Arrest Plaintiff for Obstruction of Governmental Administration

I agree with Rodriguez that there was, at a minimum, "arguable probable cause" to arrest

and prosecute plaintiff on a charge of obstruction of governmental administration, New York

Penal Code §195.05.

Under New York law, obstructing governmental administration has four elements: "1)

prevention or attempt to prevent 2) a public servant from performing 3) an official function 4) by

means of intimidation, force or interference." Lennon v. Miller, 66 F.3d at 424. The law

prohibits "an intentional insertion of one's self or one's intentions into steps taken by police

officers to fulfill their duties." People v. Beam, 866 N.Y.S.2d 564, 567 (N.Y. Sup. Ct. 2008).

"The obvious and well-settled intent of the statute is to allow police officers to go about their

business without any obstacles put in their way." Id. "Interrelated conduct-'actions coupled

with words'" is sufficient to satisfy OGA's physical component requirement. Breitkopf v.

9

Gentile, 12 Civ. 1084 (JFB), 2014 U.S. Dist. LEXIS 121581, at *110-111 (E.D.N.Y. Aug. 29, 2014) (citing In re Davan L., 91 N.Y.2d 88, 91-92 (1997); see also Petway v. City of New York, 12 Civ. 279 (ARR), 2014 U.S. Dist. LEXIS 28361, at *21-22 (E.D.N.Y. Mar. 4, 2014) (reasonable police officer warranted in believing that individual was too close to scene in order to contain situation where "commotion" was being caused).

Obstruction of Governmental Administration may also be predicated on "a defendant's refusal to obey orders to leave a premises....to 'step back' from an accident scene or to keep away from an area where a disturbance is taking place." Wilder v. Village of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003); see also Decker, supra, 981 F. Supp. 851 at 858 (probable cause existed where plaintiff disobeyed orders to step back from scene of car accident involving his wife).

Here, there was "arguable probable cause" for plaintiff's arrest and prosecution based on the charge of obstruction of governmental administration, as the elements thereof are met by plaintiff's undisputed conduct as captured on the videotape.

First, there can be no dispute that P.O. Rodriguez and the EMTs were "public servants" who were engaged in the performance of an "official function" at the time of the underlying incident. Rodriguez was on duty at the scene where the EMT technicians were helping a woman whose motorized wheelchair was not working at a busy Upper West Side intersection. (Defendant's Local Rule 56.1 Statement, ¶¶ 1-2) On the videotape, he can be heard telling the plaintiff that he and others at the scene were "working."

Second, the indisputable evidence demonstrates that plaintiff at least arguably inserted herself into the situation, in which she was not otherwise a participant, in a manner that could

reasonably be interpreted as "interfering" with the officers and thereby "preventing or attempting to prevent" both P.O. Rodriguez and the EMT technicians from performing their duties.

Plaintiff was admittedly in the vicinity of the EMT technicians as they were trying to do their work. She was arguing with Rodriguez about whether he could videotape her in an agitated manner, which caused him to ask her (politely, it must be said) to calm down. The altercation was obviously interfering with the EMTs, because one of them approached and asked plaintiff to "go over there" and "move out of the way, we have a patient." Instead of moving back, plaintiff (by her own admission, see Goodman EBT at 63), refused and uttered an obscenity at the EMT technician. It was only at that point – after plaintiff refused the EMT technician's direction that she move away from a location where public servants were trying to perform an official function – that Rodriguez arrested her.

On those undisputed (and indisputable) facts, it is at the very least arguable that plaintiff was interfering with the EMTs in the performance of their duties, and that she was attempting to interfere with P.O. Rodriguez in the performance of his duties as an officer assigned to support that endeavor. Once she refused to "move out of the way" in response to a direct order, there was at least arguable probable cause to arrest her for obstructing governmental administration.

The video taken by P.O. Rodriguez during the incident gives the lie to plaintiff's assertions that she was not asked to move out of the way by an EMT who was trying to concentrate on his work. After Scott, plaintiff cannot create a genuine issue of material fact by giving deposition testimony that is at odds with the "irrefutable" videotape evidence. The video alone dooms plaintiff's claims for false arrest and malicious prosecution.

Why plaintiff thought the police might "interact" with the lady in the wheelchair in a way that plaintiff would find objectionable is a mystery, but it is not a mystery this court needs to

11

solve. By interjecting herself into that situation in a hostile manner, and then refusing to move out of the way when directed to do so, plaintiff put herself in a position where a reasonable police officer could have thought her guilty of obstructing governmental administration as defined in N.Y. Penal Law § 240.20. Because there was "arguable probable cause" to arrest and prosecute plaintiff, Officer Rodriguez enjoys qualified immunity from suit on her claims of false arrest and malicious prosecution, and those claims must be dismissed.

Because discussion of obstruction of governmental administration resolves this aspect of the motion, there is no need to entertain whether the officer had probable cause to arrest plaintiff for disorderly conduct.

## POINT II

### THE DEFENDANT POLICE OFFICER RODRIGUEZ IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM

Plaintiff also claims First Amendment retaliation.

The elements of First Amendment retaliation are that 1) plaintiff had an interest protected by the First Amendment; and 2) defendants' actions were motivated by or substantially caused by the exercise of that right. Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). Qualified immunity as to this claim should be granted to the defendant P.O. Rodriguez for two reasons.

First, as seen above, there was, at the very least, "arguable probable cause" for plaintiff's arrest for obstruction of governmental administration. When reasonable grounds existed for the defendant to believe that there was probable cause to arrest the plaintiff for some other reason, a plaintiff cannot possibly prevail on a claim that she was arrested in retaliation for the exercise of her First Amendment rights. See Mozzochi v. Borden, 959 F. 2d 1174, 1179 (2d Cir. 1992).

12

Second, neither the United States Supreme Court nor the Second Circuit has squarely ruled that the First Amendment protects an individual who is trying to film ongoing police activity, especially if that is interfering with the performance of official duties. Therefore, the law on this issue is not "clearly established" in any "particularize[d]" way for purposes of qualified immunity analysis. Saucier v. Katz, 533 U.S. 194, 202 (2001) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). It is true that three other circuits have recognized a First Amendment right to film police interactions in public locations -- albeit subject to certain reasonable restrictions on the time, place and manner of filming -- while one has refused to recognize such a First Amendment right. See ACLU v. Alvarez, 679 F.3d 583 (7th Cir. 2012); Gericke v. Begin, 753 F.3d 1 (1st Cir. 2014); Smith v. City of Cumming, 212 F.3d 1332 (11th Cir. 2000); Fordyce v. City of Seattle, 55 F.3d 436 (9th Cir. 1995); but see True Blue Auctions v. Foster, 528 F. App'x 190 (3d Cir. 2013)(no such right recognized). I would be greatly surprised to learn that these or any court would deem it unreasonable to ask a filmer to get out of the way so as not to interfere with the performance of some official function.

Since it cannot be said that P.O. Rodriguez violated a "clearly established" First Amendment right to record police activities,  See Ortiz v. City of New York, 11 Civ. 7919 (JMF), 2013 U.S. Dist. LEXIS 136897, at *8-11 (S.D.N.Y. Sept. 24, 2013), he is entitled to qualified immunity on plaintiff's First Amendment retaliation claim as well.

## CONCLUSION

For the foregoing reasons, plaintiff's claims for false arrest, malicious prosecution and First Amendment retaliation against defendant Police Officer Steven Rodriguez are dismissed because the officer defendant is shielded by qualified immunity.

13

This leaves but one claim for further litigation: plaintiff's allegation that Rodriguez used excessive for on her in connection with this incident. The parties have until April 30, to complete discovery on this issue. Plaintiff must turn over any pertinent medical authorizations by February 25; otherwise she will be barred from offering proof of medical injury.

Dated:        New York, New York
              February 18, 2014

                                                                U.S.D.J.

BY ECF TO ALL COUNSEL

14